OPINION OF THE COURT
Donald N. Silverman, J.
Defendant Options Independent Practice Association, Inc. (Options) moves for an order disqualifying plaintiffs’ counsel. Plaintiffs cross-move (first cross motion) for an order granting partial summary judgment on the first, second, and third causes of action in their complaint, dismissal of defendants’ counterclaims, and an immediate assessment of damages.
Defendant Options cross-moves (second cross motion) for a stay, pursuant to CPLR 2201, of determination of the cross motion for partial summary judgment on the complaint, pending determination of the motion to disqualify. Defendants Options and Choicecare Long Island, Inc. (Choicecare) also cross-move (third cross motion) for an order granting summary judgment dismissing the complaint, and granting summary judgment on their respective counterclaims.
The second cross motion, for a stay of determination of the partial summary judgment motions, is granted, pending the outcome of the motion to disqualify.
Defendant Options is a wholly owned subsidiary corporation of FHC Options, Inc. (FHC), a Virginia corporation. Options is referred to as an independent practice association, to wit, an IP A. In the scheme of modern health care, an IP A serves as the link between a health maintenance organization (HMO), its individual members, and the physicians/health care providers who minister to such individual member/patients. Options was formed by FHC to do business in New York in order to comply with New York laws and regulations regarding business relationships with health maintenance organizations.
Options’ certificáte of incorporation was reportedly filed in New York on June 15, 1995. The court notes that the contract at issue, which is between Options and the plaintiff, an organization of health care providers, was executed on or about December 13, 1994, and was effective January 1, 1995. The individual signing for Options, Timothy Schultz, was at the time an employee of FHC and has never been an employee of Options. It is alleged, and not contested, that FHC handles the day-to-day operations of Options pursuant to a management agreement.
The parent corporation, FHC, was incorporated April 6, 1987 in Virginia. In June of 1991, FHC retained the services of the *584 law firm of Epstein Becker & Green, P. C. (EBG), a national law firm with offices in several cities including Washington, D.C. and New York City. The representation lasted from June 1991 to September 1992. During its representation of FHC, as many as 18 attorneys from the Washington, D.C. offices of EBG worked on FHC matters. Today, as many as 10 of these attorneys remain with EBG, including partners, associates and one "of counsel”, albeit none are currently employed in the New York office. The attorney primarily responsible for the work done for FHC left EBG in 1992 to work for another law firm and the associated files were transferred with him.
The services provided by EBG took the form of research into the regulatory environment of different States where FHC was interested in expanding its business, and in drafting various model agreements including provider agreements. It is not alleged that New York was among the States whose law was specifically researched. However, the instant contract at issue is an example of a provider agreement, which is one of the types of model contracts drafted by EBG. Although not an identical copy of such model agreement, it does contain similar language concerning the obligation of an IP A to refer a minimum number of covered persons to the provider.
On August 3, 1995, by letter, Options advised plaintiff that, effective August 7, 1995, "members of Choicecare [an HMO and the instant codefendant of Options] will no longer be assigned as covered persons [patients] under the Agreement”. This lawsuit ensued, in which plaintiff is represented by EBG. Options now seeks to disqualify EBG on the basis of the prior relationship with FHC, alleging access to confidential business planning information. In response, EBG argues that Options is an independent corporate entity that was not in existence at the time EBG terminated its representation of FHC, and that, moreover, EBG has no confidential information relating to Options.
With respect to the motion to disqualify, the moving party is obliged to establish: (i) the existence of a prior attorney-client relationship; and (ii) that the former and current representations are both adverse and substantially related (see, Solow v Grace & Co., 83 NY2d 303, 308 [1994]; Cardinale v Golinello, 43 NY2d 288, 295-296 [1977]). Where the attorney (or attorneys) primarily responsible for representing the client is (are) no longer employed with the firm, then the presumption of disqualification may be subject to rebuttal (see, Solow v Grace & Co., supra, at 313).
*585 A parent and subsidiary corporation are, as a general rule, presumed to be two distinct legal entities (see, 13 NY Jur 2d, Business Relationships, § 30, at 294). This distinction may be called into question by a showing of control by the parent. "Dominion may be so complete, interference so obtrusive, that by the general rules of agency the parent [corporation] will be a principal and the subsidiary [corporation] an agent” (Berkey v Third Ave. Ry. Co., 244 NY 84, 95 [1926]; Rapid Tr. Subway Constr. Co. v City of New York, 259 NY 472, 488-489 [1932]; Matter of Morris v New York State Dept. of Taxation & Fin., 82 NY2d 135, 141 [1993]).
To satisfy the first part of the two-prong Solow test, Options must demonstrate FHC’s complete dominion over it. As noted above, the contract at issue was signed by an employee of FHC, Options is run on a day-to-day basis by FHC pursuant to a management agreement, and the vice-president / treasurer of Options (who is also treasurer of FHC) states that Options was formed solely in order for FHC to comply with New York regulations in doing business here. The court notes that correspondence from Options, including the letter of August 3, 1995, are from the Norfolk, Virginia offices of FHC, and that no local address or employees of Options are identified. Moreover, plaintiffs counsel is alleged to have noticed a number of FHC employees for deposition. This would indicate counselor’s awareness of the close relationship between FHC and Options. The court finds that Options is essentially a shell corporation that is controlled by FHC, and that Options essentially operates as FHC’s agent. The court thus finds that a prior attorney-client relationship with EBG has been established.
With respect to the second prong of the test for establishing a prima facie claim for disqualification, the former and current representations must be both adverse and substantially related. Here, the instant amended complaint alleges causes of action for breach of contract, breach of implied covenant of good faith with respect to the contract, tortious interference as a result of the breach, and interference with contractual relations, as well as a claim for services rendered and unjust enrichment. One of the contract clauses at issue contains similar language with a clause in a model provider agreement drafted by EBG.
Here, the prior work of EBG involved contractual relationships to be entered by FHC in the course of its interstate expansion with health care providers. The contracts involved issues of referral of covered persons and methods of termination of *586 the contractual relationship. These are issues in the instant litigation. This presents a substantial and adverse relationship between the former and current representations (see, Matter of Walden Fed. Sav. & Loan Assn. v Village of Walden, 212 AD2d 718, 719 [2d Dept 1995]).
The court finds that Options has established a prima facie claim for disqualification of plaintiffs’ counsel. In light of the fact that several attorneys who worked on the FHC matters are still with EBG, and further, because the nature of the instant litigation is so closely related to the subject matter of that work, the presumption for disqualification of EBG is irrebuttable.
EBG has argued an absence of dissemination of confidential information and has asserted that the various departments of its firm’s structure have restricted the flow of any such information. However, ethical considerations support application of a per se disqualification rule except under circumstances, as found in Solow (supra), where the attorneys involved in the prior representation are no longer with the subject firm.
Accordingly, the motion to disqualify is granted. Plaintiff is given 60 days to retain new counsel and the parties are directed to appear for a conference on June 19, 1996 at 9:30 a.m. in courtroom 1601.